Kenan Gultekin, Cal. Bar No. 267562
KG LAW SD, APC
427 C Street, Suite 306
San Diego, CA 92101
Telephone: (619) 255-7549
kglaw1434@gmail.com

Attorney for
NEIL DAVID BIAFORE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(HON. STEPHEN V. WILSON)

| | |
|---|---|
| ALEX MOSTOVOI, PRO SE,<br>Plaintiff,<br><br>vs.<br><br>NEIL DAVID BIAFORE,<br>Defendant. | Case No. 25-cv-03157-SVW-AYP<br><br>DEFENDANT BIAFORE'S POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE EXHIBITS AND REFERENCES TO EXHIBITS FROM FIRST AMENDED COMPLAINT AND OPPOSITION TO DEFENDANT'S MOTION TO DIMISS ORIGINAL COMPLAINT |

## I. INTRODUCTION

Defendant Neil David Biafore respectfully moves under Federal Rule of Civil Procedure 12(f) to strike Exhibits C, D, and E and all references to these exhibits from Plaintiff Alex Mostovoi's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f). These exhibits contain proprietary business information, financial projections, and trade secrets that are expressly protected by a Non-Disclosure Agreement ("NDA") executed between Plaintiff and The Qwik Group, Inc. on May 25, 2025. Exhibit 1.

Plaintiff has voluntarily disclosed this confidential information in a public court filing without obtaining the prior written consent required by the NDA and

without seeking any protective measures such as sealing or redaction. This disclosure violates Plaintiff's contractual confidentiality obligations and exposes TQG's sensitive competitive information to public access. The exhibits are not necessary to adequately plead Plaintiff's fraud claims, as Plaintiff can describe the alleged misrepresentations with the particularity required by Federal Rule of Civil Procedure 9(b) through non-confidential allegations.

As Chief Executive Officer and founder of TQG, Defendant seeks to protect the corporation's confidential information from further public dissemination. Accordingly, Defendant respectfully requests that the Court strike Exhibits C, D, and E and all references to them from the First Amended Complaint, as well as the Exhibits attached to Plaintiff's Opposition to Defendant's Motion to Dismiss the original complaint. In the alternative, Defendant requests these exhibits be sealed to prevent continued public access to TQG's confidential business information.

## II. STATEMENT OF FACTS

On May 24, 2025, Plaintiff and TQG, Inc. executed a Non-Disclosure Agreement. The NDA identifies TQG, Inc. as the Disclosing Party and Plaintiff as the Receiving Party. The NDA defines Confidential Information broadly to include business plans, financial data, projections, pricing information, software, source code, algorithms, technical documentation, trade secrets, product designs, customer lists, sales data, marketing strategies, business operations, proprietary technology, patents, and discussions regarding partnerships, investments, or acquisitions.

The NDA requires the Receiving Party to maintain confidentiality of all Confidential Information, take necessary precautions to prevent unauthorized disclosure, refrain from disclosing or distributing Confidential Information to any third party without prior written consent from the Disclosing Party, and restrict access to those with a legitimate need to know who are bound by confidentiality obligations. The confidentiality obligations remain in effect for five years from the date of disclosure. The NDA contains no explicit exception for litigation or judicial proceedings.

In connection with Plaintiff's evaluation of the investment opportunity, Defendant Biafore provided Plaintiff with various documents and materials. On or

around May 9, 2025, Defendant forwarded to Plaintiff documents including financial projections, marketing presentations, and other materials for the purpose of evaluating TQG's business value and prospects.

On June 12, 2026, Plaintiff filed his First Amended Complaint alleging violations of Section 10(b) of the Securities Exchange Act, common law fraud, and breach of the Employment Agreement. Plaintiff attached five exhibits to the publicly filed complaint:

1. **Exhibit A**: check payment dated June 13, 2025.
2. **Exhibit B**: Employment Agreement dated May 24, 2025, between TQG, Inc. and Plaintiff.
3. **Exhibit C**: Document titled "TQG Financials" containing financial projections, including revenue projections, cost of goods sold, operating expenses, labor costs, pricing tiers, income statements, operating ratios, and annual recurring revenue calculations.
4. **Exhibit D**: Marketing presentation titled "QwikLocker" marked "Proprietary & Confidential" describing TQG's business model, product capabilities, proprietary software, market opportunity, competitive positioning, partnerships, and market analysis.
5. **Exhibit E**: Document titled "Rights and Preferences of Class A and Class B Common Stock" containing corporate governance provisions, dividend rights, liquidation preferences, conversion rights, voting rights, anti-dilution provisions, and transfer restrictions.

Plaintiff did not seek a protective order, request permission to file the exhibits under seal, or redact any information before filing the First Amended Complaint. The exhibits were filed in their entirety on the public court docket.

## III. ARGUMENT

Plaintiff's voluntary public filing of Exhibits C, D, and E violates the Non-Disclosure Agreement and warrants striking under Federal Rule of Civil Procedure 12(f). These exhibits contain information that falls squarely within the NDA's definition of Confidential Information, including financial projections, proprietary

technology descriptions, business strategy, and corporate governance terms. By filing these exhibits on the public court docket without prior written consent from TQG and without seeking protective measures, Plaintiff has disclosed confidential information to third parties in direct violation of his contractual obligations.

Public disclosure of these exhibits causes competitive harm to TQG that cannot be fully remedied after the fact. Once confidential business information is accessible on a public court docket, competitors and other third parties can access, copy, and use that information. The Court should act promptly to prevent further dissemination by striking the exhibits or, alternatively, ordering them sealed and redacted. Voluntary disclosure of trade secrets and confidential business information through public court filings can compromise the protections afforded such information because court files are open to the public. *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157.161-62 (3d Cir. 1993). Once confidential information is publicly accessible, the competitive advantage derived from that information is compromised.

**A. The NDA's Broad Definition of Confidential Information Encompasses the Exhibits**

The Non-Disclosure Agreement executed between TQG and Plaintiff establishes comprehensive protection for sensitive business information. The NDA's definition of Confidential Information encompasses multiple categories directly implicated by the exhibits attached to the First Amended Complaint.

**Exhibit C** contains financial projections, pricing tiers, and operational metrics including revenue, cost of goods sold, operating expenses, and annual recurring revenue. These materials fall within the NDA's protected categories of financial data, financial projections, pricing information, and business plans. The disclosure of granular financial information—particularly pricing structures and revenue projections—exposes TQG's financial strategy and operational performance to competitors and market participants.

**Exhibit D** contains multiple categories of protected information. The marketing deck describes proprietary software and patent-pending technology, which fall within the NDA's protection of software, algorithms, technical documentation, proprietary technology, and patents. The deck articulates business strategy and market positioning, which constitute protected business plans and marketing strategies. The exhibit references customer and partner relationships, including specific entities such as Circle K, and documents investment and partnership discussions. These partnership and investment discussions are explicitly protected under the NDA's enumerated categories.

**Exhibit E** sets forth shareholder rights, capital structure, and governance terms provided within an investment context. This information falls within the NDA's protection of discussions, agreements, and negotiations regarding investments and acquisitions. The capital structure and governance terms represent non-public corporate information that would inform potential investors' or competitors' understanding of TQG's ownership, control, and financial arrangements.

**B. Public Filing Constitutes Unauthorized Disclosure to Third Parties**

The NDA prohibits disclosure of Confidential Information to any third party without prior written consent from TQG. Public filing of the exhibits on the federal court docket constitutes disclosure to third parties, including the judiciary, court staff, the general public, and competitors. Plaintiff's voluntary attachment of the exhibits to the First Amended Complaint without seeking sealing, redaction, or protective order relief distinguishes this case from situations in which disclosure might be compelled by discovery obligations or court order.

Plaintiff exercised discretion in choosing to attach these materials to a publicly filed pleading. The voluntary nature of this disclosure is significant. Voluntary disclosure by the holder of confidential information can constitute waiver of confidentiality protections. In contrast, disclosure by third parties or disclosure compelled by legal process may not constitute waiver. Here, Plaintiff

made a voluntary choice to publicly file confidential materials without taking reasonable steps to protect their confidentiality.

**C. The NDA Remains in Effect and Contains No Litigation Exception**

The NDA provides a five-year duration of protection from the date of disclosure. The First Amended Complaint was filed on June 12, 2026, well within the five-year protective period that commenced on May 24, 2025. The information contained in Exhibits C, D, and E remains subject to the NDA's confidentiality obligations.

The NDA contains no explicit litigation exception permitting disclosure of Confidential Information in connection with legal proceedings. The absence of such a provision indicates that the parties did not contemplate or authorize public disclosure of protected information merely because litigation has ensued.

**D. The Exhibits Are Not Necessary to Plead Fraud with Particularity and Should Be Struck Under Rule 12(f)**

Federal Rule of Civil Procedure 12(f) authorizes the Court to strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. While courts are generally reluctant to grant motions to strike, striking is appropriate when material is not necessary to the pleading and its inclusion causes prejudice or serves no legitimate purpose. Releasing trade secrets is an accepted reason for striking. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

Exhibits C, D, and E are immaterial to the pleading because Plaintiff's allegations can be fully stated without them. The exhibits merely provide evidentiary support for allegations. Plaintiff's fraud allegations can be restated using non-confidential language that describes the nature, timing, and content of the alleged misrepresentations without disclosing the confidential documents themselves. The exhibits are also impertinent because their primary function is to

publicize proprietary information rather than to state a claim.

**E. The Court Should Strike the Exhibits to Prevent Further Harm**

Once confidential information is publicly filed in judicial proceedings, the harm caused by that disclosure is difficult to undo. The proprietary projections and marketing materials of TQG constitute sensitive business information which can may be accessed, copied, and disseminated by competitors once released into the public domain through court filings. This practical reality necessitates prompt judicial action to prevent further dissemination of TQG's confidential information.

**V. CONCLUSION**

For the foregoing reasons, Defendant Neil David Biafore respectfully requests that this Court:

1. Grant Defendant's Motion to Strike Exhibits C, D, and E, line 28, and all references to these exhibits from Plaintiff's First Amended Complaint;
2. Strike the Exhibits from Plaintiff's Opposition to Defendant's Motion to Dismiss the original complaint;
3. Alternatively, order that Exhibits C, D, and E be sealed to prevent public access to the confidential information they contain; and
4. Grant such other and further relief as the Court deems just and proper.

DATED: 7/6/26

Respectfully submitted,

*/s/ Kenan Gultekin*
**KENAN GULTEKIN**
Attorney for Neil David Biafore