FILED
CLERK, U.S. DISTRICT COURT
08/14/2026
CENTRAL DISTRICT OF CALIFORNIA
BY dgo DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION (HON. STEPHEN V. WILSON)**

ALEX MOSTOVOI,

Plaintiff,

v.

NEIL DAVID BIAFORE et al,

Defendants

**Case No. 5:25-cv-03157-SVW-AYP**

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS UNDER FRCP RULE 12(b)(6), MOTION FOR PROTECTIVE ORDER AND MOTION TO STRIKE**

Hearing Date: September 14, 2026

Time: 1:30 pm PT

## I. INTRODUCTION

Plaintiff pro se Alex Mostovoi ("Plaintiff") respectfully submits this Brief of Points and Authorities in Opposition to Defendant Biafore's ("Defendant" or "Biafore") concurrent Motions to Dismiss, Strike, and Seal regarding the First Amended Complaint ("FAC").

This case is a straightforward securities and common law fraud dispute. Defendant Biafore, CEO and founder of The Qwik Group, Inc. ("TQG"), induced Plaintiff to invest $25,000 by making specific, concrete misrepresentations of present fact regarding capital commitments, operational infrastructure, valuation and corporate legitimacy. Having taken Plaintiff's money, Defendant now attempts to use procedural maneuvers to strip the record of the primary evidence of his fraud, avoid liability under a standard employment contract which was part and parcel of the proposed investment, and force an un-joined shell corporate entity into arbitration. Because the FAC satisfies all federal pleading standards and the contested exhibits form the core evidentiary framework of the alleged fraud, Defendant's motions should be denied in their entirety.

## II. STATEMENT OF FACTS

The detailed, specific and undisputed statements of facts in the FAC are incorporated herein in their entirety. In summary, in April and May 2025, Defendant Biafore engaged in extensive telephone and Zoom recruitment sessions with Plaintiff. To secure Plaintiff's cash investment, Biafore made explicit, non-speculative and unqualified factual declarations:

1. **Capital Commitments:** He claimed TQG had secured binding contracts for $100 million and $25 million from two large investors.

2. **Corporate Infrastructure:** He claimed multi-person professional teams were currently installing the first 100 automated last-mile shipping lockers across Northern California, the installations to be completed "within days".

3. **Commercial Contracts:** He claimed TQG had established commercial relationships with Circle K and active pilot layout negotiations with Walmart and others.

4. **Executive Vetting:** He directed Plaintiff to speak with Robert Wilson, who was explicitly marketed as an active TQG Director and "high-profile accomplished partner at Accenture," to validate the company's valuation.

To substantiate these material descriptions, Biafore emailed Plaintiff a formal promotional and disclosure package on May 9, 2025. This package contained the **"TQG Financials" (Exhibit C to FAC)**, detailing thousands of active operational locker revenue distributions, and the **"QwikLocker" Series A Pitch Deck (Exhibit D to FAC)**, which declared that the platform ran on "Proprietary Software" with active brand pipelines.

Relying on these specific disclosures, Plaintiff wired $25,000 to TQG on May 24, 2025. Concurrently, Plaintiff executed an **Employment Agreement (Exhibit B to FAC)** directly tied to his investment status, appointing him as an Advisory Board Member at an annual salary of no less than $59,000.

The entire paperwork and oral representations were a sham. When Plaintiff inspected TQG's office on July 24, 2025, Biafore admitted the company had zero active operations, zero technical infrastructure, and only one clerical non-salaried employee. Plaintiff's physical inspection of the network on July 26, 2025, revealed that TQG owned exactly *one* locker in Santa Cruz. It was completely disconnected from power and the internet because no usable software existed. Director Wilson had no present relationship with Accenture, as attested to by the firm. TQG never paid Plaintiff his contractually owed wages. On August 31, 2025, Plaintiff demanded rescission, which was ignored.

After the original complaint had been filed against Biafore, he reached out to the Plaintiff with a settlement offer which Biafore reneged on at the last minute before signing a

settlement agreement. Biafore's second counsel thereafter engaged in procedural movements seeking dismissal of the complaint and bringing into litigation a confidentiality agreement, settlement negotiations and compensation owed to the Plaintiff. After the Plaintiff filed the FAC, Defendant filed the present motions with the same arguments but seeking to reverse the effect of those issues he himself raised as part of his original motions.

## III. LEGAL ARGUMENT

### A. THE FIRST AMENDED COMPLAINT PLEADS FRAUD WITH THE HEIGHTENED PARTICULARITY REQUIRED BY RULE 9(b) AND THE PSLRA

Defendant again argues that the FAC fails to state a claim under Fed. R. Civ. P. 12(b)(6) because it lacks specificity under Rule 9(b) and the PSLRA. This argument distorts the record. A complaint satisfies Rule 9(b) if it identifies the "who, what, when, where, and how" of the fraudulent statement. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). The FAC does exactly that:

- **Who:** Defendant Neil David Biafore.
- **What:** Explicit lies that $125 million in capital was contractually committed, that multi-person teams were currently deploying 100 lockers, and that Director Wilson was an Accenture partner who could be trusted to confirm TQG valuation.
- **When:** April and May 2025, specifically culminating in written delivery of paperwork via email on May 9, 2025.
- **Where and How:** Via structured Zoom calls, telephone links, and digital PDF transmissions received by Plaintiff.

#### 1. These Are Present Verifiable Misrepresentations, Not Aspirational "Puffery"

Defendant frames his statements as forward-looking projections or mere optimistic opinion. While future growth projections may be non-actionable, a statement regarding a **present existing fact** is fully actionable. Telling an investor that $125 million *has already been contractually committed* and that teams *are currently deploying physical hardware* are descriptions of past and present reality. They were completely fabricated to induce reliance.

#### 2. Contemporaneous Facts Establish a Strong Inference of Scienter

To satisfy the PSLRA, a plaintiff must allege facts giving rise to a strong inference of scienter that is at least as compelling as any innocent explanation. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Defendant argues Plaintiff is using "hindsight" to claim fraud.

However, the inference of fraud here is immediate and compelling. On May 9, 2025, Biafore distributed charts detailing a structured operational rollout across thousands of host portals. Yet, a mere 60 days later, Biafore admitted in person that the company possessed zero working software, had no engineering staff, and had only deployed one non-functional metal box. A startup company does not lose a $125 million capital foundation, complete software code, and full engineering teams in 60 days due to "ordinary supply chain delays". The only logical and plausible inference is that these assets never existed, and Defendant knew his statements were false when made.

**3. Economic Loss and Causation Are Adequately Pleaded**

Defendant asserts that because Plaintiff has not sold his shares, he has suffered no realized economic loss under *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). This rule applies to open-market transactions where intervening market forces obscure fraud. In a direct, closed-end private placement where no market exists and a business is completely non-functional, an investor's loss is measured by the total deprivation of capital. Plaintiff's investment was stripped of value from the moment of purchase because the equity was attached to a corporate shell. Out-of-pocket damages and rescission are standard, fully recognized remedies for direct private-placement investment fraud under Section 10(b). *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1210 (9th Cir. 2012).

**B. PLAINTIFF'S LOST WAGES CLAIM IS ENTIRELY PLAUSIBLE AND PROPERLY SUBMITTED UNDER FEDERAL SUPPLEMENTAL JURISDICTION**

Defendant seeks dismissal of the wage claim, arguing that he cannot be held personally liable for an agreement executed by TQG, and that the court lacks jurisdiction. Both arguments are spurious.

**1. Corporate Officers Managing At-Will Labor Face Statutory Liability**

Under both the Fair Labor Standards Act (FLSA) and California Labor Code, individual corporate officers who exercise operational control over working conditions, payroll accounts, and employment functions are classified as "employers" and are held jointly and severally liable for unpaid compensation. The FAC explicitly notes that Biafore maintained exclusive personal control over TQG's bank accounts, directed all corporate operations, and managed Plaintiff's work instructions. Biafore is an employer under federal and California law and is personally liable for the $29,250 in unpaid wages.

**2. The Claims Share an Identical Nucleus of Operative Fact**

Under 28 U.S.C. § 1367(a), supplemental jurisdiction is proper because the

employment contract and the investment scheme are completely intertwined. The Employment Agreement was explicitly executed *as a condition of and part of the same transaction* as the $25,000 security purchase on May 24, 2025. Isolating these claims would force inefficient, duplicate litigation across separate forums.

**3. Defendant Biafore Cannot Enforce the Arbitration Clause**

Biafore seeks to compel arbitration using Section 11 of the Employment Agreement. However, the contract explicitly shows that the agreement is between **TQG** and Plaintiff. Defendant Biafore chose to sue and respond *strictly in his individual capacity* and did not join TQG as a party. As a non-signatory individual, Biafore cannot simultaneously argue that he is separate from the agreement to escape liability while trying to leverage its arbitration clause for his personal benefit.

**C. DEFENDANT'S MOTION TO STRIKE UNDER RULE 12(f) CONSTITUTES AN IMPERMISSIBLE ATTEMPT TO DESTROY EVIDENCE**

Defendant moves under Rule 12(f) to strike Exhibits C, D, and E to the FAC, alongside all corresponding narrative text, claiming they are immaterial evidentiary submissions made "voluntarily" by the Plaintiff. These assertions are simply not true—Defendant in its motion to dismiss the original Complaint put those exhibits in issue by arguing "insufficiency" of facts to establish fraud and trying to use the non-disclosure agreement as a shield. Defendant's arguments have been adequately addressed in Plaintiff's Brief in Opposition to the Motion to Dismiss and his Sur-Reply, both of which are incorporated by reference.

Further, motions to strike are generally disfavored and will not be granted unless the contested matter has no possible relation to the controversy and causes severe prejudice. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Here, the exhibits are the absolute core of the litigation:

- **Exhibits C & D** represent the precise, written fraudulent materials forwarded by Biafore to induce the investment. Striking them would strip Plaintiff of the ability to show how and why the fraud occurred.
- **Exhibit E** verifies the disparate capital privileges that Biafore concealed during recruitment and illustrates piecemeal and selective disclosure of key information to the Plaintiff which was part of the fraud scheme.

These exhibits are highly relevant, material, and critical to satisfying the heightened pleading mandate of Rule 9(b). Rule 12(f) cannot be used to delete foundational evidence from a complaint.

### D. DEFENDANT HAS FAILED TO SHOW COMPELLING REASONS TO SEAL THE EXHIBITS

Alternatively, Defendant moves to seal Exhibits C, D, and E under a protective order, repeating its argument about protection under a pre-investment Non-Disclosure Agreement. The Plaintiff adequately addressed the purported use of the NDA to hide fraud in its Sur-Reply that is incorporated by reference.

#### 1. The Precedent Favors Public Access Over Private Agreements

There is a powerful common-law presumption in favor of public access to judicial records. Parties seeking to seal documents attached to a non-discovery pleading must articulate **compelling reasons** supported by specific factual findings of actual commercial damage. *Kamakana*, 447 F.3d at 1178-79. Private confidentiality agreements cannot override the public's right to view the evidence supporting federal court cases.

#### 2. Speculative Competitive Injury Does Not Outweigh Fraud Protection

Defendant states that publicizing these materials exposes TQG to "substantial competitive harm" from market competitors. This claim is completely contradicted by Defendant's own admissions. TQG has zero operations, zero active technical engineering staff, zero proprietary logistics software, and zero scalable corporate infrastructure. By definition, a corporate entity that exists only on paper cannot suffer competitive harm to its non-existent "business".

Furthermore, the pitch deck distributed to prospective investors was designed for public dissemination. Defendant cannot use a protective order to hide evidence of a fraud under the guise of protecting "trade secrets" that his own admissions prove do not exist.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion to Dismiss, Motion to Strike, and Motion for Protective Order to Seal in their entirety.

Dated: August 14, 2026

Respectfully submitted,

Alex Mostovoi, Plaintiff Pro Se

**PROOF OF SERVICE**

I, Alex Mostovoi, declare that I am over the age of 18 and a party to this action. On August 14, 2026, I served the foregoing **Brief of Points and Authorities in Opposition** on Defendant's counsel of record by electronic transmission through the CM/ECF system for the Central District of California:

Kenan Gultekin, Esq. (Cal. Bar No. 267562)
KG LAW SD, APC
427 C Street, Suite 306, San Diego, CA 92101
Email: kglaw1434@gmail.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 14, 2026

Alex Mostovoi